FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 30, 2026

SEAN F. MCAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

AMY R.,

Plaintiff,

v.

FRANK BISIGNANO,
Commissioner of Social Security,

Defendant.

No. 2:25-CV-00319-JAG

**ORDER AFFIRMING DECISION OF THE ALJ**

**BEFORE THE COURT** is Plaintiff's Opening Brief, the Commissioner's Brief in response, and Plaintiff's Reply. ECF Nos. 11, 16, 17. Attorney Chad Hatfield represents Amy R. (Plaintiff); Special Assistant United States Attorney Shata Stucky represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before the undersigned by operation of Local Magistrate Judge Rule (LMJR) 2(b)(2), as no party returned a Declination of Consent Form to the Clerk's Office by the established deadline. ECF No. 3. After reviewing the administrative record and briefs filed by the parties, the Court **DENIES Plaintiff**'s Motion for Summary Judgment and AFFIRMS the ALJ's decision.

## I. JURISDICTION

Plaintiff filed applications for Disability Insurance Benefits on July 8, 2019, alleging disability since January 28, 2019. Plaintiff's claim was denied initially

and on reconsideration. Administrative Law Judge (ALJ) Marie Palachuk held a hearing on March 2, 2022, and issued an unfavorable decision on March 18, 2022. Tr. 21-31. The Appeals Council denied review on January 17, 2023. Tr. 1-6. Plaintiff appealed this final decision of the Commissioner and this Court issued the Order Granting Plaintiff's Motion to Reverse the Decision of the Commissioner, remanding to the ALJ for further proceedings. Tr. 762-771. ALJ Melissa Hammock held a hearing on May 29, 2025, at which vocational expert Tom Polsin, and Plaintiff, who was represented by counsel, testified. Tr. 703-736. The ALJ denied benefits on June 16, 2025. Tr. 679-695. The ALJ's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on August 19, 2025. ECF No. 1.

## II. STATEMENT OF FACTS

The facts of the case are set forth in detail in the transcript of proceedings and the ALJ's decision and are only briefly summarized here. Plaintiff was born in 1972 and was 48 on the alleged onset date. Tr. 694.

Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of January 28, 2019 through her date last insured of September 30, 2022. Tr. 682.

## III. STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is

defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## IV. SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) the claimant can perform specific jobs that exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If a claimant cannot make an adjustment

to other work in the national economy, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## V. ADMINISTRATIVE FINDINGS

On June 16, 2025, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At ***step one***, the ALJ found Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of January 28, 2019 through her date last insured of September 30, 2022. Tr. 682.

At ***step two***, the ALJ found Plaintiff had the severe impairments of anxiety, a depressive disorder, vertigo, migraines, asthma, obesity, and hemochromatosis. Tr. 682.

At ***step three***, the ALJ determined Plaintiff does not have an impairment or combination of impairments that meets or medically equal one of the listed impairments in 20 C.F.R., Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). Tr. 683.

The ALJ also found Plaintiff has the residual functional capacity ("RFC") to perform light work, with the following limitations:

> [S]he can occasionally stoop, kneel, crouch, and crawl, while she can never drive, operate machinery or equipment, or climb ladders, ropes, or scaffolds. The Claimant can have no exposure to bright lights (defined as brighter than office florescent lights), and she can have no exposure to high, exposed places or proximity to moving mechanical parts. She can tolerate occasional exposure to extreme heat, extreme cold, humidity, or atmospheric conditions, and she can perform tasks in no louder thana moderate noise environment as that term is defined in the Selected Characteristics of Occupations (SCO). The claimant can understand, remember, and carry out simple instructions, and perform work without a specific production rate pace (such as assembly line or hourly production quotas). She can make simple work-related, decisions, adapt to occasional changes in a routine work setting, and have occasional interaction with supervisors, while she can have

> occasional superficial interaction with coworkers and no interaction with the public.

Tr 686.

At ***step four***, the ALJ found Plaintiff had no past relevant work. Tr. 694.

At ***step five***, the ALJ found, based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience, and RFC, Plaintiff was capable of performing jobs that existed in significant numbers in the national economy, including the jobs of housekeeping cleaner, routing clerk, and office helper. Tr. 694

The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from the alleged onset date through the date last insured. Tr. 695.

## VI. ISSUES

The question presented is whether substantial evidence exists to support the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred by: 1) rejecting the opinions of Dr. Singh and Dr. Khurana; 2) failing to conduct an adequate analysis at step three; 3) improperly rejecting the testimony of Plaintiff and her husband; and, 4) failing to meet her burden at step five.

## VII. DISCUSSION

### A. Medical Opinions

Plaintiff contends the ALJ erred by rejecting the opinions of Dr. Singh and Dr. Khurana without adequately considering consistency and supportability.

#### 1. *Dr. Singh.*

Plaintiff contends the ALJ erred by rejecting the opinion of Dr. Singh "based on an alleged minor date discrepancy and generally normal physical examination

findings. (Tr. 692)." ECF No. 11 at 10. Plaintiff argues the longitudinal record supports Dr. Singh's findings and cites several instances within the longitudinal record that are consistent with Dr. Singh's assessment. *Id.* at 9-13. While Plaintiff argues the ALJ erred, in part, by rejecting Dr. Singh's opinion due to "an alleged minor date discrepancy," (ECF No. 11 at 10), Plaintiff does not explain what the alleged discrepancy is or why it was erroneous for the ALJ to take it into consideration.

Plaintiff's remaining argument is that the ALJ erred by rejecting Dr. Singh's opinion due to normal physical examination findings. Plaintiff lists multiple examples in the record that are consistent with Dr. Singh's opinion. ECF No. 11 at 10-13. Only two of these examples, however, appear to provide objective medical evidence in support of Dr. Singh's opinion; the majority of the examples are instances where a medical record is simply reflecting the information Plaintiff provided wherein she described her symptoms. *Id*.

Plaintiff references a 2019 MRI documenting increasing size and number of white matter lesions, which she says provides objective support for Dr. Singh's opinion. *Id.* at 10, citing Tr. 942. Plaintiff is correct that the record includes an MRI report stating, "[l]esions have increased in size and number since 5/23/2009." Tr. 942. Defendant contends the MRI does not actually support Dr. Singh's opinion because: 1) Dr. Singh did not rely on the MRI in his opinion; and, 2) the 2022 MRI showed Plaintiff's condition was stable. ECF No. 16 at 7.

There are several issues with Plaintiff's reliance on the 2019 MRI report to show consistency with Dr. Singh's opinion. First, the report simply states there was a change—it does not provide any medical interpretation for what (if anything) that change means. Plaintiff cites to no medical evidence linking this change in lesions with Plaintiff's symptoms. Without such a connection, the report fails to provide objective medical evidence in support of Dr. Singh's opinion.

Second, as noted by Defendant, there is another MRI in 2022 that showed no further changes. Tr. 1229. Accordingly, the MRI findings fail to provide objective support for the Court to make a finding that the ALJ erred in assessing Dr. Singh's opinion.

Plaintiff also points to an exam on September 12, 2020 by Ryan Agostinelli, PA-C, where Plaintiff experienced an episode of vertigo that required the provider to pause the exam until she felt better. ECF No. 11 at 12, citing Tr. 466. The provider witnessed the incident and noted the exam was paused for one to two minutes. The one to two minute pause in the exam for the vertigo episode to pass does not tend to show that Plaintiff has vertigo spells so severe as to require several hours of recovery. The rest of the medical evidence Plaintiff cites in support of Singh's opinion are instances where Plaintiff's self-reports are recorded in the medical report. While these self-reports can be found within the medical evidence, they do not themselves provide objective medical evidence in support of Dr. Singh's opinion.

Importantly, the ALJ referenced multiple medical records that were inconsistent with Dr. Singh's opinion. Further, the ALJ noted a few internal inconsistencies in Dr. Singh's report including inaccurate notation of dates of treatment and included a contradictory statement that Plaintiff either could never or constantly use her upper extremities for gross and fine manipulation. Tr. 692. Specifically, the ALJ noted the error in Dr. Singh's report regarding dates of treatment "call[s] the provider's knowledge of the claimant's treatment history into question." *Id.* The ALJ cited these supportability and inconsistency issues as reasons for finding Dr. Singh's opinion unpersuasive. The ALJ did not base her entire reasoning solely on a date discrepancy and normal physical examination findings. The ALJ gave many reasons for finding Dr. Singh's opinion was not persuasive.

An ALJ may reject an opinion that is internally inconsistent. *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). The internal inconsistencies within Dr. Singh's opinion, coupled with many medical records that are not consistent with Dr. Singh's opinion, provide sufficient support for the ALJ's rejection of Dr. Singh's opinion.

**2. *Dr. Khurana.***

Plaintiff contends the ALJ erred by rejecting the opinion of Dr. Khurana. Plaintiff argues much of the ALJ's reasoning was already rejected by this Court. ECF No. 11 at 14. Plaintiff further argues the ALJ erred by: 1) overlooking Dr. Khurana's finding that Plaintiff "tends to minimize some of her mental health symptoms"; 2) failing to identify that Dr. Khurana considered both mental and physical impairments, and, 3) not giving more weight to Dr. Khurana as a psychiatrist considering the totality of Plaintiff's impairments. *Id.* at 15. Defendant argues the ALJ did not err and thoroughly addressed supportability and consistency, while addressing the Court's concerns in the prior order. ECF No. 16 at 8.

Plaintiff's assertion the ALJ relied on the same reasoning that was rejected in the prior order is not persuasive. The ALJ directly noted Dr. Khurana's opinion "was the primary subject of the remand from the United States District Court for the Eastern District of Washington and Appeals Council." Tr. 690. The ALJ provided a detailed explanation for why she did not find Dr. Khurana's opinion persuasive, providing multiple reasons that were not previously rejected by this Court.

As Defendant noted in its brief, the ALJ pointed to many inconsistencies within the record, including: Dr. Khurana's opinion regarding social limitations was inconsistent with Plaintiff's 2019 function report indicating no problems getting along with others (Tr. 690, citing Tr. 278); Dr. Khurana's opinion regarding social limitations was inconsistent with the many records describing Plaintiff as pleasant and cooperative with neutral or anxious mood (Tr. 690, citing Tr. 403-406, 510, 557, 564, 568, 584, 587, 589, 603, 934, 1028, 1185, 1234, 1255); Dr. Khurana's opinion that claimant had difficulty with changes in her work routine, citing Plaintiff's 2019 Function Report wherein Plaintiff indicated she handled stress and changes in routine well (Tr. 690, citing Tr. 278); and Dr. Khurana's opinion regarding Plaintiff's judgement, concentration, and persistence (that they were severely limited) and the inconsistency with other examinations that noted normal judgment, attention, concentration, and thought process (Tr. 690-691, citing Tr. 403-406, 535, 552, 597, 934, 1185, 134, 1255). Accordingly, the ALJ provided ample support for her finding that Dr. Khurana's opinion was inconsistent with the record.

Plaintiff's contention that the ALJ failed to identify that Dr. Khurana considered both mental and physical impairments is also incorrect. The ALJ specifically notes in her decision that "whereas Dr. Khurana was engaged to perform a psychological evaluation of the claimant, his opinion was expressly based on the claimant's mental *and* physical impairments combined, which muddies the waters in terms of establishing the claimant's purely mental maximal capabilities…though as a psychiatrist, the consultant is qualified to comment on both." Tr. 690 (emphasis in original). Not only did the ALJ recognize that Dr. Khurana considered both types of impairments, she expressly discussed the difficulties this presents in evaluating Dr. Khurana's opinion, and then explained that she addressed those difficulties by comparing the opinion to Dr. Khurana's

objective findings. *Id.* Plaintiff fails to provide any argument or analysis as to why this would constitute error.

While Plaintiff is correct that the ALJ did not expressly note Dr. Khurana's opinion that Plaintiff tends to minimize some of her symptoms, Plaintiff, again, fails to explain how or why this constitutes error. Given the multitude of acceptable reasons for discounting Dr. Khurana's opinion, even if it were error, the Court finds it to be harmless error. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (an error is harmless when "it is clear from the record that the . . . error was inconsequential to the ultimate nondisability determination").

Finally, Plaintiff's argument that the ALJ should have given Dr. Khurana more deference as a psychiatrist opining on both physical and metal limitations is also without merit. Again, the ALJ noted that Dr. Khurana addressed both types of limitations and she also provided a complete explanation as to why she did not find Dr. Khurana persuasive. The ALJ still must consider supportability and consistency of the opinion at issue, which she did in this case. Here, the Court finds the ALJ adequately addressed supportability and consistency with respect to Dr. Khurana's opinion and did not err in finding it unpersuasive.

**B. <u>Step Three.</u>**

Plaintiff contends the ALJ erred by failing to conduct an adequate analysis at Step Three. Plaintiff argues the ALJ failed to adequately consider Listing 11.02 for migraine headaches. ECF No. 11 at 15. Plaintiff asserts the ALJ erred in finding: there was no adequate description of a typical headache event; there was not sufficient evidence of sufficiently frequent migraines; and that exams were largely normal since migraines are only symptomatic during an occurrence, and imaging showed increase is size and number of white matter lesions. *Id*. at 15-16. Plaintiff claims she suffers from at least 2-3 migraines per month and frequently experiences multiple migraines per week, despite adhering to abortive medications.

*Id*. at 16. Plaintiff also asserts she could not use prophylactic medication and could only utilize abortive medication because the prophylactic medications were not effective, caused severe side effects, and she suffers from a blood disorder with only one kidney, making such medication inappropriate in her case. *Id.* Plaintiff stated that a treatment note from March 20, 2022 documents that she suffers from three migraines per week and in conjunction with the vertigo episode during the appointment, the ALJ should have found her disabled. *Id*.

Defendant disagrees with Plaintiff's assertions and notes medical findings that are equal in severity to all criteria for the most similar impairment are required and such equivalence cannot be based on symptoms alone, so the ALJ can only find equaling if there is sufficient support. ECF No. 16 at 11-12. The ALJ relied on listing 11.02(B) and (D) as the most similar impairment listed and Defendant argues the ALJ explained why Plaintiff did not meet the listing, for example, that there was no evidence outside of Plaintiff's own reports to establish frequency. *Id*. at 12, Tr. 683. Defendant argues that Plaintiff's claim that she meets the listing relies solely on her statements in the record and this is not sufficient. *Id.* at 12-13.

In her reply brief, Plaintiff counters by pointing to the MRI results that document an increase in number and size of white matter lesions. ECF No. 17 at 6. Beyond that, Plaintiff's reply largely does not address Defendant's counterarguments.

Plaintiff fails to show the ALJ erred by finding she did not meet the listing. As noted by Defendant, Plaintiff's arguments largely rely on her own subjective statements rather than objective medical evidence. Plaintiff's strongest argument is reliance on the MRI showing increased size and number of white lesions. This alone, however, is insufficient to provide objective medical evidence necessary to meet the listing. As noted above, the MRI report finds an increase in size and number of white matter lesions, however, it does not connect those lesions to

Plaintiff's symptoms in any way. Plaintiff points to no medical records in the file that link the lesions to her headaches. This not only fails to provide objective evidence of the existence of her headaches but also fails to establish frequency of her headaches. Plaintiff only has her own subjective reports in the record to support her argument that she meets the listing. Accordingly, the ALJ did not err at Step Three.

**C. <u>Subjective Symptom Allegations.</u>**

Plaintiff contends the ALJ erred by discounting Plaintiff's subjective symptom allegations. It is the province of the ALJ to make credibility determinations. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). However, the ALJ's findings must be supported by specific, cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Once the claimant produces medical evidence of an underlying medical impairment, the ALJ may not discredit testimony as to the severity of an impairment merely because the objective evidence fails to fully corroborate the degree of pain alleged. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

Plaintiff argues the ALJ found she satisfied the first part of the credibility test, so the ALJ was required to provide clear and convincing reasons to make a negative credibility finding, therefore erring. ECF No. 11 at 17, referencing Tr. 687. Plaintiff relies on *Robbins v. Social Security Administration*, 466 F.3d 880 (9th Cir. 2006) in her argument that the ALJ erred. *Id.* The Court presumes

Plaintiff is referring to the principles from *Smolen* and *Lester* establishing that absent affirmative evidence of malingering, the ALJ's reasons for rejecting a claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). Plaintiff is correct that the ALJ in this case needed to provide specific, clear, and convincing reasons for rejecting her testimony, and the ALJ did here, as discussed below.

Plaintiff contends the ALJ made vague assertions that Plaintiff's allegations are unsupported by objective medical evidence, which is "contrary to law." ECF No. 11 at 17. Plaintiff alleges the ALJ relied on unremarkable physical exam findings (*i.e.*, strength and range of motion) which have no nexus to the Plaintiff's disabling allegations, and the ALJ "largely repeated the erroneous reasoning previously rejected by this Court." *Id.* According to Plaintiff, the ALJ's finding that Plaintiff is capable of light work based on generally normal findings regarding Plaintiff's musculoskeletal function, extremity strength, range of motion, gait, and overall physical capability is "misguided and led to clear legal error." *Id.* at 18-19, referencing Tr. 688. Plaintiff goes on to say the ALJ's reasoning is not germane to the issues in this case but would apply more to complaints of back or knee pain where one would expect to see a claimant's discomfort. *Id.*

Plaintiff notes the ALJ recognized Plaintiff's vertigo spell at her September 2020 exam with Ryan Agostinelli, PA-C "which tends to confirm the claimant's symptom testimony." *Id*. at 18, citing Tr. 687. Plaintiff contends the ALJ "[p]erhaps most egregiously" erred in mischaracterizing the record regarding the 2022 MRI where the ALJ said the MRI was stable versus prior imaging in 2019, but that ignores that the 2019 MRI showed an increase in size and number of legions and Plaintiff testified "she understands these lesions to be the cause of her

migraines and vertigo spells (Tr. 716), which provides objective support the ALJ incorrectly asserts the record is lacking." *Id*.

Defendant disagrees with Plaintiff's arguments and contends the ALJ did not err in discounting Plaintiff's subjective symptom complaints. Defendant notes the vertigo spell at the September 2020 exam relied on by Plaintiff as evidence is noted in the medical records as lasting only one to two minutes before the exam could resume, which does not support the allegation that vertigo is completely debilitating, and it undermines Plaintiff's claims. ECF No. 16 at 13, referencing Tr. 687. Defendant further argues the ALJ not only acknowledged the lesions on the MRIs, but adopted limitations to account for Plaintiff's impairments. *Id.* at 14.

Plaintiff responds to Defendant's arguments in her reply brief, stating "[t]he Commissioner engages in a boilerplate defense of the ALJ's flawed credibility findings" and says the reasons provided do not constitute clear and convincing nor are they supported by substantial evidence. ECF No 17 at 7. Plaintiff then, as previously, largely relies on the same arguments asserted in her initial motion. *Id.* at 7-8.

The Court finds the ALJ did not err and properly assessed Plaintiff's subjective complaints. First, Plaintiff contends "the ALJ largely repeated the erroneous reasoning previously rejected by this Court." ECF No. 11 at 17. The Court's prior order in reference to Plaintiff's credibility was tied to the errors in assessing Dr. Khurana's opinion. The Court also found the prior ALJ did not provide clear and convincing reasons to discount Plaintiff's testimony. Since the prior order found error in the ALJ's assessment of medical evidence and as a result, found error in the ALJ's assessment of Plaintiff's credibility, there were no specific findings regarding credibility in that order. As explained above, the Court does not find error in the ALJ's reassessment of Dr. Khurana's opinion, therefore

the ALJ's findings with respect to Plaintiff's credibility are not tainted by her assessment of Dr. Khurana's opinion.

Second, Plaintiff alleges the ALJ committed clear error in her "misguided" finding that Plaintiff can perform light work based on generally normal findings in reference to musculoskeletal function, extremity strength, range of motion, gait, and overall physical capabilities. ECF No. 11 at 18-19, referencing Tr. 688. Plaintiff asserts the ALJ's reasoning is not germane to the current issues but would be more applicable to complaints such as knee or back pain. *Id*. at 19. Plaintiff's argument is based on a misreading of the ALJ's opinion. The portion of the ALJ's opinion referenced by Plaintiff relates to Plaintiff's obesity, hemochromatosis, and asthma, not vertigo and migraines, though the ALJ does mention that she took "the positional etiology of some of the claimant's vertigo spells" into consideration for this portion of the RFC as well. *See* Tr. 688. The ALJ goes on to specifically address vertigo and migraines and the limitations assessed for those specifically. *Id*.

Third, Plaintiff argues the ALJ recognized her vertigo spell at the September 2020 appointment and says that "tends to confirm claimant's symptom testimony. (Tr 687)." ECF No. 11 at 18. Again, Defendant notes the records regarding this episode show the vertigo spell only lasted for one to two minutes before the examination could resume. ECF No. 16 at 13. Plaintiff does not provide any explanation as to how this one to two minute episode confirms her testimony that her vertigo spells are debilitating. This objective report of a short vertigo episode tends to evidence the opposite of Plaintiff's complaints, yet the ALJ still noted it and accounted for Plaintiff's vertigo spells in the RFC.

Finally, Plaintiff contends "perhaps most egregiously the ALJ mischaracterizes the record by asserting that an MRI in 2022 was stable versus prior imaging in 2019," and argued this ignores that the 2019 MRI showed an

increase in lesion number and size. ECF No. 11 at 18. Plaintiff further argues she testified that she understands the lesions to cause her migraines and vertigo. *Id*. citing Tr 716. Plaintiff asserts this is objective medical evidence in support of her claims. As noted by Defendant, Plaintiff here is relying on her own interpretations of the evidence and, as Defendant argues, this is insufficient to establish a basis for a remand. ECF No. 16 at 13, citing *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) ("Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed."). The ALJ did not misstate or mischaracterize the record. She said the 2022 MRI was stable versus the 2019 MRI, which is correct. Further, the Plaintiff's argument relies entirely on her own testimony that *she* understands the lesions to cause her migraines and vertigo. This is not objective medical evidence- this is the Plaintiff's interpretation of medical evidence. Plaintiff has cited no medical testimony or opinion that the lesions are (or even could be) the cause of her migraines and vertigo. She simply testified that is her belief. Again, the ALJ did not err in noting the MRI in 2022 was stable versus the MRI in 2019.

An ALJ cannot, however, rely only on objective medical evidence as a basis for finding a claimant is not credible. Although it cannot serve as the sole ground for rejecting a claimant's symptom statements, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). An ALJ may cite inconsistencies between a claimant's testimony and the objective medical evidence in discounting the claimant's symptom statements. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). But this cannot be the only reason provided by the ALJ. *See Lester*, 81 F.3d at 834 (the ALJ may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence).

In addition to the above inconsistencies with medical evidence, the ALJ's opinion also points to Plaintiff's own statements which undercut her allegations regarding intensity, persistence, and limiting effects of her symptoms. For example, the ALJ notes in Plaintiff's 2019 Function Report she indicated: no issues understanding, following instructions, or memory (aside from needing reminders to take medication); no issues getting along with family, friends, neighbors, or authority figures and further noted she had never lost a job due to interpersonal problems; she can use a computer, go shopping, pay bills, handle bank accounts, and drive (provided she is not dizzy). Tr. 684-685, citing Exhibit 7E/Tr. 272-280.

"An ALJ may consider inconsistent statements by a claimant in assessing her credibility." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). When considered in conjunction with the medical record as a whole, Plaintiff's own statements regarding what she is able to do cast doubt on the intensity, persistence, and limiting effects of her symptoms.

**D. <u>Lay Testimony.</u>**

Plaintiff contends the ALJ erred by rejecting the testimony of her husband, William Elkins who said Plaintiff is "unable to maintain regular, continuous employment due to interruptions from headaches and vertigo spells of dizziness, citing Tr. 29, 281-289)." ECF No 11 at 20. Plaintiff argues the ALJ was incorrect in stating she does not have to provide analysis of lay witness testimony (Tr. 694); Plaintiff instead contends Ninth Circuit caselaw says otherwise. *Id.* Plaintiff cites to two unpublished cases without providing any further analysis or even holdings from those cases. *Id.* Defendant notes there is no published case law from the Ninth Circuit on the issue however also cites to two unpublished cases. ECF No. 16 at 14-15. Defendant notes these cases found ALJs are not required to provide analysis of lay witness testimony. *Id.* Defendant further argues that, even

if the ALJ was required to provide such analysis, the error here would be harmless because Mr. Elkins testimony is similar to Plaintiff's allegations. *Id*. at 15.

Since the time the parties submitted their briefs, the Ninth Circuit issued two opinions addressing an ALJ's duty to articulate their reasons for discounting lay testimony, *Fain v. Bisignano*, No. 25-3219, 2026 WL 2795427 (9th Cir. Sept. 18, 2026) and *Collard v. Bisignano*, No. 25-6334, 2026 WL 2856741 (9th Cir. Sept. 23, 2026). In *Fain*, the Ninth Circuit held that the Social Security Administration's 2017 revisions to regulations did not abrogate the "germane reasons" standard required to discredit lay testimony. *Fain* at 5. The Ninth Circuit found the error was not harmless because the lay testimony in that case included details that were not included in Fain's own testimony. *Id.* at 6. In *Collard*, the Ninth Circuit found error in the ALJ's assessment of Collard's credibility, so the ALJ also erred in discrediting the lay testimony that paralleled Collard's testimony. *Collard* at 4.

Recent Ninth Circuit opinions have clarified that an ALJ's failure to provide any reasoning for discounting lay testimony is error. However, these opinions do not alter prior case law holding that "an ALJ's failure to comment upon lay witness testimony is harmless where the same evidence that the ALJ referred to in discrediting the claimant's claims also discredits the lay witness's claims." *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012). *Collard* clarified that where the ALJ erred in assessing the claimant's claims, the error is no longer harmless. The ALJ in this case, however, did not err in assessing claimant's claims. Therefore, even if the ALJ erred in failing to provide reasoning to discount the lay witness testimony in this case, that error is harmless as Mr. Elkins' testimony is similar to Plaintiff's and the Court has already found the ALJ's reasons for discounting Plaintiff's testimony were adequate.

**E. Step Five.**

Plaintiff contends the ALJ erred by failing to meet her Step Five burden and argues the vocational expert's testimony compels disability. ECF No. 11 at 21. Plaintiff argues the RFC limitation of occasional interaction with supervisors is disabling and the vocational expert's testimony was based on an incomplete hypothetical. *Id.* at 21-22.

Plaintiff, citing *Leitz v. Kijakazi*, 2023 WL 4342114 at *2 (9th Cir. July 5, 2023),[1] argues that the ALJ's limitation of Plaintiff to occasional interaction with supervisors bars all job training and, consequently, precludes all competitive employment. ECF No. 11 at 21. The undersigned does not agree with the proposition that a limitation to occasional interaction with supervisors is *per se* disabling.

Plaintiff mischaracterizes the holding in *Leitz* by suggesting that any limitation of occasional interaction with supervisors is *per se* disabling. The issue in *Leitz* was threefold: 1) the ALJ included a training period caveat, 2) the ALJ did not provide explanation for the caveat, and 3) the VE testified that without the caveat, Leitz would be unable to perform the available jobs. *Leitz* at 2-3. None of these issues are present in this case. *Leitz* found that the limitation of occasional

---

[1] In *Leitz*, the ALJ held that the claimant "can have brief, superficial interaction with co-workers and the public; and can have occasional interaction with supervisors (although additional time for training is acceptable)." *Leitz*, 2023 WL 4342114 at *2. The Ninth Circuit determined that the "training-period caveat" was not supported by the record, and that there was no evidence that the claimant's mental problems were "somehow alleviated during training periods because they are less likely to include supervisor interactions than other work periods, or that employers would be willing to tolerate her limitations during training periods." *Id.*

interaction with supervisors along with a caveat allowing additional interaction for training with no explanation regarding the caveat was error ("[b]ecause the training-period caveat has no foundation in any part of the record and is wholly unexplained, we cannot say that the caveat is supported by substantial evidence. The Caveat and its conclusion cannot be sustained.") *Id.* at 2. Next, in *Leitz*, the vocational expert testified that Leitz could not perform any of the available jobs without the training period caveat. *Id*. at 3. There was no such testimony in the present case. In this case, the VE was given the RFC, including "occasional interaction with supervisors," and asked if there were jobs this individual could perform, and the VE listed three jobs: housekeeping-cleaner, routing clerk, and office helper. Tr. 729-730.

Plaintiff further argues the vocational expert's testimony that competitive employment would not allow for a 20 minute break after every 20 minutes of training compels disability. ECF No. 11 at 21, citing Tr. 733-734. As Defendant notes, Plaintiff's argument here is based on the vocational expert's responses to extended hypotheticals raised by counsel, not the vocational expert's testimony regarding the actual residual functional capacity assessed in Plaintiff's case. ECF No. 16 at 31-33, Tr. 733-734.

Plaintiff's argument takes the residual function capacity assessed and adds her own additional limitations to argue for disability in this case. The residual functional capacity only limits Plaintiff to "occasional interaction with supervisors." Tr. 686. Plaintiff's counsel posed the hypothetical about a 20 minute break for every 20 minutes of training to the vocational expert, but that limitation is not found anywhere in Plaintiff's residual functional capacity. Plaintiff's suggestion of additional limitations to the vocational expert does not compel disability. Just as a vocational expert's testimony "has no evidentiary value" when based on an incomplete hypothetical (*see Carmickle v. Comm'r*

*Soc.Sec.Admin,* 533 F3d 1155, 1166 (9th Cir. 2008) (if an ALJ's hypothetical is based on a residual functional capacity assessment that does not include some of the claimant's limitations, the vocational expert's testimony "has no evidentiary value")), a vocational expert's testimony based on an extended hypothetical posing limitations not included in the residual functional capacity cannot be relied upon to establish disability. Here, the vocational expert testified as to the specific residual functional capacity in this case and identified three jobs Plaintiff could perform in light of her residual functional capacity. Tr. 728-730. Plaintiff's argument relies on limitations not included in her residual functional capacity and therefore fails to show the ALJ erred.

## VIII. CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and is not based on legal error. Accordingly, **IT IS ORDERED**:

1. Defendant's Motion, ECF No. 16, is **GRANTED**.
2. Plaintiff's Motion, ECF No. 11, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED September 30, 2026.

JAMES A. GOEKE
UNITED STATES MAGISTRATE JUDGE